UNITED STATES of America

v.

Martha CONCEPCION, a/k/a Martha Martinez, a/k/a Martha Morales, a/k/a Julianna Sanchez, a/k/a Sonia Serrano, a/k/a Gladys Torres, Defendant.

UNITED STATES of America

v.

Virginia FIGUEROA, a/k/a Patris Gordon, a/k/a Lillian Navarro, a/k/a Juana Martinez, a/k/a Rita Pagan, a/k/a Mary Puig, a/k/a Rosa Rivera, Defendant.

UNITED STATES of America

v.

Theresa Amelia ROMAN, a/k/a Gladys Arias, a/k/a Pamela Gonzales, a/k/a Sandra Ortega, a/k/a Mirna Perez, Defendant.

UNITED STATES of America

v.

Delores VARGAS, a/k/a Olga Almondovar, a/k/a Nelly Garcia, a/k/a Rosario Lopez, a/k/a Gladys Taveras, Defendant.

UNITED STATES of America

v.

Bertha ESCOBAR, a/k/a Marina Marrero, Defendant.

UNITED STATES of America

v.

Alison POLANCO, a/k/a Andrea Garcia, Defendant.

UNITED STATES of America

v.

Maria VARGAS, a/k/a Betty Hernandez, a/k/a Caridad Nunez, a/k/a Delia Valentin, a/k/a Esther Vargas, Defendant.

UNITED STATES of America

v.

Romula REAL, a/k/a Nancy Cepero, a/k/a Brenda Diaz, a/k/a Marina Diaz, a/k/a Alexandra Gomez, Defendant.

UNITED STATES of America

v.

Victor HEREDIA, a/k/a Juan Colon, a/k/a Victor Delgado, Defendant.

UNITED STATES of America

v.

Jacqueline PEREZ, a/k/a Miguelina Cordero, a/k/a Yaquelin Perez, Defendant.

UNITED STATES of America

v.

Miriam SOSA, a/k/a Ivette Clemente, a/k/a Maria Mojica, Defendant.

UNITED STATES of America

v.

Elena Garcia RAMOS, a/k/a Elena Gonzales, a/k/a Ligia Ramos, a/k/a Ana Serano, Defendant.

UNITED STATES of America

v.

Eleuteria FERNANDEZ, a/k/a Mitilde Figueroa, a/k/a Carmen Pagan, a/k/a Myrna Santiago, Defendant.

UNITED STATES of America

v.

Onfalia RAMOS, a/k/a Lisette Carrillo, a/k/a Ruth Gonzales, Defendant.

UNITED STATES of America

v.

Lucia TRINIDAD, a/k/a Azecuna Echevarria, a/k/a Caridad Soto, Defendant.

UNITED STATES of America

v.

Cruz PENA, a/k/a Antonia Pacheco, a/k/a Elena Velez, Defendant.

UNITED STATES of America

v.

Mercedes DIAZ, a/k/a Sandra Acosta, a/k/a Lisette Carillo, a/k/a Ziamara Colon, a/k/a Eva Diaz, a/k/a Idalia Escobar, a/k/a Josephine Ojeda, a/k/a Bernice Ortiz, a/k/a Ladisloa Sanchez, Defendant.

UNITED STATES of America

v.

Maria BURDIE, a/k/a Antonia Gonzales, a/k/a Cecilia Lopez, a/k/a Francia Martinez, a/k/a Zaida Mendez, a/k/a Maria Ovalle, a/k/a Milagros Rivera, a/k/a Amarilis Rodriguez, a/k/a Evarista Santana, a/k/a Maria Santana, a/k/a Lola Santos, a/k/a Lucia Tejeda, a/k/a Victoria Valdes, Defendant.

UNITED STATES of America

v.

Dinorah DOMINGUEZ, a/k/a Vanessa Arango, a/k/a Raisa Meja, a/k/a Minerva Perez, a/k/a Altagracia Ramos, a/k/a Juana Reyes, a/k/a Ada Rodriguez, a/k/a Karen Torres, Defendant.

UNITED STATES of America

v.

Gloria Martinez DELGADO, a/k/a Catalina Arroyo, a/k/a Aura Garia, a/k/a Victoria Irizarry, a/k/a Mercedes Mendez, Defendant.

Nos. CR 91–781, CR 91–1165, CR 91–1253, CR 91–1266, CR 91–1299, CR 91–1374 to CR 91–1376, CR 92–157, CR 92–261 to CR 92–263, CR 92–372, CR 92–377, CR 92–384, CR 92–385, CR 92–553, CR 92–576, CR 92–696 and CR 92–698.

United States District Court, E.D. New York.

Dec. 11, 1992.

Andrew J. Maloney, U.S. Atty., Brooklyn, NY by Gordon Mehler and Michael Considine, Asst. U.S. Attys., for U.S.

Steven Gold, Gen. Counsel, Dept. of Investigation, New York City, for City of New York.

Edward Kratt, New York City, for Virginia Figueroa.

Jake LaSala, Kew Gardens, NY, for Roman.

Richard Rosenkrantz, Brooklyn, NY, for Delores Vargas.

John Apicella, Brooklyn, NY, for Escobar.

Lawrence Vogelman, New York City, for Polanco.

Joel Cohen, New York City, for Maria Vargas.

James Kousouros, Kew Gardens, NY, for Real and Fernandez.

Lori Levenson, Brooklyn, NY, for Heredia.

Edward Panzer, New York City, for Carlista Figueroa.

Peter Birkett, Brooklyn, NY, for Perez.

Harold Pokol, New York City, for Sosa.

Hal Myerson, New York City, for Elena Garcia Ramos.

Richard Berne, Bronx, NY, for Onfalia Ramos.

Richard Rosenberg, New York City, for Trinidad.

Bruce Smirti, Willington Park, NY, for Pena.

Debra Baker, New York City, for Diaz.

Nicholas DeFeis, New York City, for Burdie.

Lloyd Epstein, New York City, for Dominguez.

James Neville, New York City, for Delgado.

## SENTENCING MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

## I. INTRODUCTION

These 20 defendants are the second group of approximately 55 who are being prosecuted in this court for fraudulently obtaining assistance from the Aid to Families with Dependent Children, Food Stamp and Medicaid programs for the poor. The group now before the court consists primarily of Dominican women who bought, sold and used false identity documents and who bribed government employees to obtain government funds.

This court's memorandum in *United States v. Concepcion*, 795 F.Supp. 1262 (E.D.N.Y.1992), explains the law governing sentencing for these crimes, as well as the common problems presented by the sentencing of these particular defendants. The *Concepcion* memorandum is deemed a part of this memorandum and order. This memorandum and order may be referred to as *Concepcion II*.

Discussion of individual sentences follows. As with those defendants sentenced in *Concepcion*, problems can be expected to arise in the execution of some of these sentences. The court's ruling in *Concepcion* governing the continuing obligations of the Probation Department, *id.* at 1306–07, applies with equal force in these cases.

Almost a score more defendants will be sentenced in early 1993 according to the pattern applied in this order and in *Concepcion I*.

## II. INDIVIDUAL SENTENCES

A. Virginia Figueroa, CR 91–1165

■ Ms. Figueroa was born in the Dominican Republic. She is 33 years old. She is a citizen of that country and a resident alien in the United States. She defrauded the government of $83,912 using six aliases. She bought and then sold fraudulent documents to others. Six other defendants in this and related cases used these documents to defraud the government of an additional $161,565. Defendant also bribed two Human Resources Administration (HRA) employees.

The Guidelines call for a sentence of 15 to 21 months in prison followed by two to three years of supervised release. The government describes defendant as one of the most valuable cooperators in these cases; it has moved for a downward depar-

ture based upon her substantial assistance in the investigation and prosecution of these offenses. She has been ready to testify and has convinced some defendants, including her sister and a cousin, to surrender even after receiving substantial threats, including the breaking down of her door.

Defendant was raised in the Dominican Republic, the second of seven children. After completing the equivalent of seventh grade, defendant left school to help the family by working washing hair and selling used clothes. Four years later, defendant paid to be smuggled to Puerto Rico where she cleaned houses to support herself. There she met and married, in April 1982, a Bronx native. Ten months later she gave birth to a son. She acquired permanent residency status in the United States. In 1984, defendant and her spouse separated and she moved to New York. They were then divorced.

Defendant has been residing for eight years with her son in a five-room apartment in upper Manhattan. The apartment is clean and comfortably furnished, in large part through the proceeds of defendant's crimes. The bulk of the remaining proceeds of defendant's crimes was used to purchase clothes for the family, pay dental and phone bills, and support relatives in the Dominican Republic.

Defendant is in good health. She has supported herself through the years through a combination of unskilled jobs and public assistance. For the past year or so, she has sold pocket books to friends and acquaintances out of her apartment, yielding about $100 per week. She is employable and is about to commence a job with a cleaning service.

Following her arrest, defendant sent her nine-year-old son to stay with defendant's mother in the Dominican Republic because of threats made against her; he has since returned to this country and attends school now. Her ex-husband now resides in New York, is employed as an automobile mechanic, and maintains regular contact with his son.

Prolonged separation of defendant from her son is likely to harm the child. For deterrence reasons, some confinement is in order due to defendant's fraud and bribes, and her facilitation of the fraud of others. This consideration is mitigated by defendant's substantial cooperation with the government and her remorse.

Defendant is sentenced to five years probation with eight months of house arrest. During the period of home confinement, she may leave home only to work, for medical treatment, for religious services or as permitted by Probation. A $50 assessment is imposed. Restitution of $83,912 is ordered, payable as Probation directs. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure has been ordered to protect the child and for other reasons set forth in this memorandum. The primary purpose of this sentence is general deterrence; eight months of house arrest is sufficient for this purpose.

Probation shall arrange for the restitution payments so as to permit sufficient income for the family. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment. Probation shall attempt to obtain support for the child from the father.

B. Theresa Amelia Roman, CR 91–1253

■ Ms. Roman was born in the Dominican Republic. She is 26 years old and a

United States citizen. Using four aliases, defendant stole $22,398.65 in AFDC funds and food stamps. Upon hearing from other defendants of the government's investigation, she voluntarily surrendered to the authorities and subsequently fully admitted her crimes.

The Guidelines call for six to twelve months in prison followed by supervised release of two to three years. Alternatively, the court may impose a term of three months imprisonment followed by supervised release with a special condition requiring three months community confinement or home detention. The Guidelines also provide for a sentence of one to five years probation with intermittent or community confinement or home detention for six months. The government moves for downward departure since defendant has been a helpful cooperator who has offered to testify and provide further information at the government's request.

Defendant's family immigrated to the United States in 1970, when she was three years old. Her parents settled, with defendant and defendant's three siblings, in the southwest Bronx. The family subsisted on the father's income as a factory worker and the mother's income from a series of jobs until the two were divorced in 1985. The mother is now employed by ITT Corporation and resides in New Jersey. One of defendant's siblings has moved to Pennsylvania and the other two live with the father in the Bronx.

Defendant married in 1987. She and her husband separated in 1990. They have two children, a girl aged three and a boy aged 18 months. The father, a chauffeur, never paid any support; he has now ceased all contact with the family. The children live with defendant and appear to be well cared for.

Defendant now lives in a modestly furnished apartment in a drug-infested neighborhood of the southwest Bronx. She has been unemployed and on public assistance since September of 1990. Defendant became enmeshed in this case in an effort to pay off a loan shark from whom she had borrowed $2000 to fund her daughter's baptismal rite. The note quickly ballooned and defendant used much of the proceeds of her fraud to pay off the loan shark and various other debts associated with this ceremony. The remainder went to clothes for the family and to those who assisted her in initiating her fraudulent claims.

Defendant is in good health and has a high school education. She is employable. She is a full-time student at Bronx Community College. She intends to seek a college degree. Separating her from her children would be punitive and destructive both to her and the children. Defendant turned herself in, is remorseful and has cooperated with the government. Employment of defendant and support of the children by her and the father are priorities.

Defendant is sentenced to five years probation and ordered to pay restitution of $22,398.65 and a $50 assessment. She is required to serve the first six months of this period in home confinement. She may leave home only to work, go to school, for medical treatment, for religious services or as permitted by Probation. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is consistent with the Guidelines.

Probation shall arrange for the restitution payments so as to permit sufficient income for the family. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week or attending school for 10 full hours per week, such employment or school shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. Satisfactory completion of a credit of school work shall entitle defendant to a $100 credit toward restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medic-

aid or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment. Probation shall attempt to obtain support from the father.

### C. Delores Vargas, CR 91–1266

■ Ms. Vargas was born in the Dominican Republic. She is 37 years old and a resident alien in the United States. Defendant was a major participant in the fraud perpetrated here, netting $510,266.15. $148,607.15 of this she stole directly from the AFDC and food stamp programs through the use of six aliases. The remaining $361,659 represents the proceeds of her sales of fraudulent documents to other participants in the scheme. False documents were the essential tool in the success of the fraud in these cases.

The Guidelines call for a sentence of 21 to 27 months in prison followed by two to three years of supervised release. The government describes defendant as one of the two cooperators most instrumental in making these cases and moves for a downward departure based upon this substantial assistance. She provided information on more than 30 defendants and was responsible for the convictions of a number of them. The government wishes her continued help which can best be obtained while she is not incarcerated.

Defendant was raised in a middle-class family in Santo Domingo and came to the United States illegally in 1976. In 1977, she began dating a Dominican man and they had two children, now aged nine and thirteen. He returned to the Dominican Republic with the children and she has not supported them since, though she does maintain contact. They returned to New York earlier this month, but she does not have effective custody of the children.

Defendant has collected public assistance and failed to work for all of the 15 years she has remained in the United States. She is in good health and has an eighth-grade education. She now lives with her sister and brother-in-law and their children in a nicely furnished two-bedroom apartment in the Bronx. Defendant claims to have spent the proceeds of her crimes on clothes and furnishings.

Despite defendant's cooperation with the government, her crimes were among the most serious in all these cases. She stole a great deal and facilitated the theft of much more. Defendant's long repudiation of her family obligations removes her children as considerations in her case. While she ought to help support her children in the Dominican Republic, there is little the court can do about that. Moreover, there has been no consistent effort by defendant to support herself by non-governmental welfare assistance.

Defendant is sentenced to five years probation, the first twelve months to be served in a community treatment facility. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure is required because of defendant's cooperation and for reasons set forth in this memorandum.

A $50 assessment is imposed. Restitution of $148,607.15 is ordered, payable as Probation directs. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### D. Bertha Escobar, CR 91–1299

■ Ms. Escobar was born in Columbia. She is 43 years old and a United States citizen. Between 1985 and 1991 defendant,

in her capacity as an Eligibility Specialist in the New York City Human Resources Administration (the HRA), solicited and accepted bribes to issue fraudulent benefits under the AFDC and food stamp programs. Defendant's bribe proceeds totalled $9,060. Defendant also utilized false names and identification to open fraudulent benefits cases for herself, collecting a total of $49,070.25. She assisted others who stole welfare benefits so that the loss to the government is over $100,000 as a result of this defendant's activities.

Defendant was introduced to this source of income by co-worker and co-defendant Anna Vega, whom this court has sentenced to prison for three years for her own bribe-taking. *See United States v. Concepcion,* 795 F.Supp. 1262, 1290–91 (E.D.N.Y.1992). Defendant has cooperated extensively with the government and her assistance has yielded many arrests. She helped lead the government to a bail-jumping codefendant.

The Guidelines, as computed by Probation and with no objection from either party, call for imprisonment of 10 to 16 months followed by supervised release of two to three years. Alternatively, the court may impose a sentence of five months imprisonment followed by a term of supervised release with a special condition requiring community confinement or home detention for five months. The government moves for a downward departure based upon defendant's substantial assistance in the investigation and prosecution of these offenses.

Defendant was raised in poverty in Columbia in a family in which the father physically abused the mother. Defendant had a daughter, now 18, out of wedlock and then came to the United States, with the child and defendant's mother, in November 1975. Her decision to come to the United States largely resulted from the scorn she was subjected to as an unwed mother, which caused her to lose her job as a schoolteacher in Columbia. Defendant's four siblings remained in Columbia and have led successful lives there.

Defendant and her mother lived with a friend in Queens until defendant was married in 1976 to a soldier in the United States Army stationed in Kentucky. Defendant subsequently obtained permanent residency in the United States. Her mother did not and has returned to Columbia. Defendant then moved to Kentucky to live with her husband and gave birth there to her second daughter, now 14 years old.

The husband was an alcoholic and drug addict who physically abused her. They separated in 1978 and defendant returned to New York with her daughter. The couple was divorced in 1981 and he is now dead.

In 1983, defendant met her second husband and they were married in Queens in 1984. He was also an alcoholic and also abused her. Separation followed in 1986 and divorce in 1990. He has remarried and resides in Queens.

Defendant now lives in a two-bedroom apartment in Whitestone, Queens with her two daughters, ages 18 and 14. The older daughter is attending college and both work part-time. The home is well-maintained and comfortably furnished. Defendant suffers from and takes medication for hypertension, which took the lives of both her mother and father. She has a college degree obtained in Columbia and a business school certificate in clerical business machines. She is working toward a master's degree at Hunter College. She earned $21,600 per year at her job with the HRA from 1982 until her arrest. Defendant declared personal bankruptcy in 1989 and has considerable new debts. She is now working as a counselor-coordinator at Spanish Speaking Elderly Counseling of Brooklyn, earning $25,000 per year.

Defendant abused her position as a public servant and her crimes are among the more serious in these cases. Incarceration away from home will adversely affect the children. The children's respective fathers have long since left the picture and defendant's family all live in Columbia. No one is available to care for defendant's children in her absence. Nevertheless, deterrence requires some period of incarceration for this defendant.

Defendant is sentenced to ten months in prison followed by three years of supervised release. A longer term would cause unnecessary deterioration to both defendant and her family. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is at the low end of the Guidelines. This sentence is sufficient. Any harsher sentence would adversely affect defendant's daughters. The execution of the sentence is stayed for three months to permit further cooperation.

A mandatory assessment of $50 is imposed. Defendant is ordered to pay restitution of $49,070.25. Probation shall arrange for the restitution payments so as to permit sufficient income for the family. It shall also attempt to obtain support from the remaining father for his child. In view of the prison sentence, no provision for community service is needed. If defendant's family in Columbia can care for the children while defendant is incarcerated, Probation shall attempt to facilitate this or another form of appropriate custody.

### E. Alison Polanco, CR 91–1374

█ Ms. Polanco was born in Manhattan and is a United States citizen. She is 23 years old. Defendant stole $30,855.05 from the AFDC and food stamps programs with the use of one name between 1988 and 1991.

The Guidelines call for imprisonment of six to twelve months. The court may impose a term of supervised release of two to three years following imprisonment. As an alternative, the court may impose a term of three months in prison followed by a term of supervised release with a special condition requiring three months of community confinement or home detention. Defendant is also eligible for probation under the Guidelines of one to five years, provided the court imposes a condition requiring intermittent or community confinement or home detention for six months. Because of her cooperation, the government moves for a downward departure.

Defendant had a stable upbringing in an intact family, though her parents are now divorced and the father lives in the Dominican Republic with his second wife. He owns a food distribution chain at which defendant's brother is employed.

Defendant now lives in the Bronx with her fiance. She is working at A & S as a salesperson and in a cafe owned by her fiance and his mother in New Jersey.

Defendant is in good health. She obtained a high school education in the Dominican Republic in 1986 and a General Equivalency Diploma in New York in 1987. Defendant has taken numerous courses at the Borough of Manhattan College, but has stopped attending because of financial pressures. She worked as an apprentice secretary from 1987 to 1988, when she was terminated because she was unreliable. Defendant was then employed by Macy's as a sales associate until November 1991. She is now indebted to Macy's, the Internal Revenue Service, and others in an amount exceeding $4,000. She pays rent of $510 per month.

Defendant is placed on five years probation. She is required to serve the first six months of the probation period in home detention. She may leave home only to work, for school, for medical treatment, for religious services or as permitted by Probation. Home detention is practicable in this case because of the absence of children. The cost to taxpayers of detention in a community treatment center would be $991 per month whereas probation and home confinement costs only $115 per month. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is within the Guidelines range.

In addition, defendant is ordered to make restitution of $30,855.05 and to pay an assessment of $50. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If the defendant is gainfully employed earning income for at least 36 hours per week, such

employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. For each credit earned at school she will receive a credit of $100 toward the restitution. These provisions are designed to encourage gainful employment. Defendant is capable of supporting herself and should work. While the court has no power to order that she not be given welfare, food stamps, Medicaid or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### F. Maria Vargas, CR 91–1375

 Ms. Vargas was born in the Dominican Republic. She is 24 years old. She is a resident alien in the United States. She used aliases to open six fraudulent cases between 1988 and 1991, stealing $107,977 from the AFDC and food stamp programs. Defendant gave false statements to Pretrial Service officers about her prior record and background. She also lied about her name to investigating agents, but later made a detailed statement outlining her involvement and identifying others in the scheme.

Before 1981, defendant supported herself for some time dealing in drugs and acting as a drug courier. She decided to pursue welfare fraud when she became convinced that continued involvement with drugs was too risky and would lead to separation from her child. In the spring of 1986, defendant was arrested three times in incidents involving cocaine and marijuana, and was remanded to jail. In July of 1986, defendant was sentenced to four months in jail and four years and six months probation for criminal possession of a controlled substance. Defendant was released in July of 1986 and was discharged early from her term of probation on October 24, 1989. She admits that, despite her sentence, she supported herself transporting and selling cocaine in 1987 and 1988 when she was on probation.

Based upon defendant's theft and her criminal record, the Guidelines call for 15 to 21 months in prison followed by two to three years supervised release.

Defendant's parents separated when she was four years old. Her father, a construction worker in the Dominican Republic, cared for her and her sister. The father then remarried and his second wife cared for defendant and her sister, as well as her own two children. When defendant was about five years old, the family moved to the Virgin Islands and then to Miami. When defendant was thirteen, the family returned to the Dominican Republic. Defendant had difficulty adjusting to school there, and was sent to live with her aunt in the Bronx. Because the aunt's boyfriend made sexual advances, defendant discontinued her education and joined a cousin in Providence, Rhode Island. By age seventeen, defendant had returned to New York and was earning a great deal from her involvement with drugs.

In February 1988, defendant gave birth to a son by a colleague in the drug trade. She ceased involvement with him before the child's birth. The father is now incarcerated in a New York State prison for possession of a weapon. As already noted, upon the child's birth, defendant decided that drugs threatened her relationship with her child and began her involvement with welfare fraud.

Defendant and her son now live with her sister and her sister's husband in Providence. When defendant is in New York, she stays with the child's paternal grandmother in the Bronx. Defendant's stepmother also resides in Providence, with defendant's two half sisters. Defendant is in good health and has a seventh-grade education, but she has held legal employment for only a few months of her life.

Imprisonment far from home will harm this defendant's young child. Nevertheless, defendant's criminal history suggests that some incarceration is necessary to deter her and others in her position from continued dependence upon crime. Defendant's family can care for her son in Providence while she is away.

Defendant is sentenced to eight months in prison followed by three years of supervised release. A longer term would cause unnecessary deterioration to both defendant and her family. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure is required in order to protect the child and for other reasons set forth in this memorandum.

The sentence is stayed for three months. If defendant leaves the country during this time, the sentence will be stayed as long as she remains outside the country. A $50 assessment is ordered. Defendant will pay $107,977 in restitution. Probation shall arrange for the restitution payments so as to permit sufficient income for the family. In view of the prison sentence, no provision for community service is needed.

### G. Romula Real, CR 91–1376

■ Ms. Real was born in the Dominican Republic. She is 35 years old and a resident alien in the United States. She used three false names to steal a total of $25,-105.05 from the AFDC and Food Stamp programs.

The Guidelines call for imprisonment of six to twelve months followed by two to three years of supervised release. As an alternative, the court may impose a sentence of three months in prison followed by a term of supervised release with a special condition requiring three months community confinement or home detention. Defendant is also eligible for probation of one to five years provided that the court imposes a condition requiring community confinement or home detention for six months. The government has moved for a downward departure based upon defendant's substantial assistance in the investigation and prosecution of these offenses.

Defendant describes a happy childhood in the Dominican Republic, where her father, a farmer, and her mother both remained. The parents are now dead. Defendant remains close to her two half sisters, with whom she grew up, who now have families and live in the Dominican Republic. Defendant immigrated to the Bronx in 1982 where she now resides in the Fordham section.

Defendant has two children. Her son is now seventeen years old. He was born in the Dominican Republic and lived there with his father and then with defendant in the United States for five years. He has now returned to Santo Domingo where he lives with defendant's half sister. Defendant sends $50 per month for his support. Defendant was married to another man in 1982 and they were divorced in 1989, but she has no children from this marriage. Defendant also has an eight-year-old daughter whose father owns a grocery store in the Bronx. Defendant did not marry or remain involved with the father, but he visits his daughter once or twice a month. He does not provide financial support. The girl attends a local parochial school and is doing well there.

Defendant is in good health. She has a fifth-grade education and has partially completed training as a home attendant. Her English is poor. Defendant has worked intermittently at a variety of jobs near or below minimum wage. She collected legitimate public assistance during 1989 and 1990, before initiating the fraud at issue here. Currently she is employed full-time as a personal care assistant for a cancer patient at $5.25 per hour. She has received certificates of achievement for her work as a home care attendant. Defendant's boyfriend, who works for a delivery company, pays her rent.

Defendant now believes her actions were a mistake and expresses regret. She is earning income and caring for her young daughter. Incarceration far from home would needlessly damage both defendant and her daughter.

Defendant is placed on five years probation, with six months to be served in home confinement with provision to leave for work, medical care, religious worship, and as allowed by Probation. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is within the Guidelines range.

Defendant is ordered to pay a $50 assessment and make restitution of $25,105.05 as directed by Probation. Probation shall arrange for the restitution payments so as to permit sufficient income for the children. During the period of probation the defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment. Probation shall attempt to obtain support for the younger daughter from her father.

### H. Victor Heredia, CR 92–157

█ Mr. Heredia was born in the Dominican Republic. He is 33 years old and a resident alien in the United States. During 1991, defendant used two names to steal $13,985.65 from the AFDC and Food Stamp programs. He also sold false documents to others who stole a total of $43,108 in benefits. In 1982, defendant was arrested for fare beating and charged with a disorderly conduct violation.

The Guidelines call for imprisonment of six to twelve months followed by two to three years of supervised release. As an alternative, the court may impose a term of imprisonment of three months followed by a term of supervised release with a special condition requiring three months of community confinement or home detention. Defendant is also eligible for probation of one to five years, provided that the court imposes a condition requiring intermittent or community confinement or home detention for six months.

Defendant was raised in the Dominican Republic until age 19. His father drove a taxi. He then stowed away on a ship to Puerto Rico where he lived for two years and was married to a Puerto Rican woman. In 1980, they came to New York. They were separated from 1988 to 1992, but now live together in the Bronx in a three-room, rent-controlled apartment. They have two children, ages six and nine, who attend local public school. Defendant's wife has worked as a preschool teacher for the past three years, earning $497 every two weeks. Defendant continued to support the family during the separation.

Defendant admits his crimes and regrets the trouble he has brought upon his family. He spent the proceeds of his fraud by sending $1000 to his extended family in Santo Domingo, giving $300 per month to his wife for child support, and contributing to the rent of his then girlfriend, Virginia Figueroa, who is a related defendant in these cases.

Defendant is in good health. His English is poor and he did not complete high school. From 1983 until 1990, defendant worked as a sample maker, earning $380 per week. Lately, he has been doing intermittent tailoring out of his apartment, earning about $125 per week. Defendant's credit card balance exceeds his current assets.

Gainful employment of defendant and income for his family are priorities in his case. Defendant is placed on five years probation, with six months to be served in home confinement with provision to leave for work, medical treatment, religious worship, and as permitted by Probation. Presence of the father in the home in a relatively stable relationship is desirable. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is consistent with the Guidelines.

Defendant is ordered to pay a $50 assessment and to make restitution of $13,985.65 as directed by Probation. Probation shall arrange for the restitution payments so as to permit sufficient income for the children. During the period of probation defendant

shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed (including employment at home) earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that he not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

## I. Jacqueline Perez, CR 92–261

█ Ms. Perez was born in the Dominican Republic. She is 24 years old and has permanent residency status in the United States. Defendant used two aliases to steal $50,552 from the AFDC and Food Stamp programs between 1988 and 1992. She also received Medicaid benefits.

The Guidelines call for a sentence of eight to fourteen months in prison followed by a term of supervised release of two to three years. As an alternative, the court may impose a term of imprisonment of four months followed by a term of supervised release with a special condition requiring four months community confinement or home detention. The government moves for a downward departure based upon defendant's substantial assistance in the investigation and prosecution of these offenses.

One of five children, defendant had a difficult childhood in the Dominican Republic. Her mother departed for the United States in 1978, when defendant was ten years old, and her father supported the family alone. Defendant was treated by a psychiatrist for depression between 1986 and 1988, and her brother developed a mental illness. Defendant's father continues to live in poverty in the Dominican Republic, but has remarried. The mother now lives in Brooklyn and works as a home attendant. Defendant came to join her in 1988. Defendant's two sisters and two brothers now also live in Brooklyn. One sister, Marilyn Perez, is a related defendant in these cases.

Defendant lives alone in an apartment in Brooklyn. In addition to depression, defendant has suffered from and been treated for chronic headaches, blood clots in her legs, and blurred vision. Some of this treatment was paid for with Medicaid benefits resulting from the fraud.

Defendant received a high school education in the Dominican Republic. She is a freshman at Long Island University studying to be a physician's assistant. She also has had training in word processing and photography in the United States. She is employed as a home attendant in Staten Island. She began by working with patients who have Alzheimer's Disease, earning $449.01 every two weeks. She now earns $620 every two weeks at the same location working with handicapped persons. In the past, she worked as a sewing machine operator, as a laborer at an envelope company, and as a hairdresser, but was not able to hold these jobs.

Defendant claims to be deeply shocked and embarrassed by her crimes. She says that the person who introduced her to welfare fraud convinced her that it was not criminal and could simply be abandoned if anyone found out. She resorted to these crimes, she says, only after she failed to secure employment upon coming to New York. Her mentally ill brother required her frequent help and attention and often would engage in disruptive behavior at places where she tried to work. The proceeds of her fraud were used to pay bills and support her father.

Defendant has no children. In view of the stable life she has established in this country and the income she can earn, as well as her remorse and cooperation, imprisonment away from New York City is not desirable. Moreover, the work she does with handicapped persons is important to the community.

Defendant is sentenced to five years probation and ordered to pay restitution of $50,552 and a $50 assessment. The first six months of probation shall be served in home detention with provision to leave for work, school, medical care, religious worship and as allowed by Probation. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure is required for the welfare of defendant and her family and for other reasons set forth in this memorandum.

During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week or attending school for at least 10 hours per week, such schooling or employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. For every credit completed in school she will receive $100 toward the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

J. Miriam Sosa, CR 92–262

██ Ms. Sosa was born in the Dominican Republic and is a citizen of that country. She is 32 years old. She stole $39,053.15 from the AFDC and Food Stamp programs between 1988 and 1992, using two fictitious names.

The Guidelines call for a sentence of six to twelve months in prison, followed by two to three years of supervised release. As an alternative, the court may impose a term of imprisonment of three months followed by a term of supervised release with a special condition requiring three months of community confinement or home detention. Defendant is also eligible for probation of one to five years, provided that the court imposes a condition requiring intermittent or community confinement or home detention for six months. The government moves for a downward departure based upon defendant's substantial assistance in the investigation and prosecution of these offenses.

Defendant's parents were never married. The father, whom defendant claims had upwards of 25 children, played no role in her upbringing. He died in 1990. Defendant's mother raised her until she was ten years old, when the mother joined her sisters in Venezuela to seek employment. Defendant remained in the Dominican Republic with her maternal grandparents, who are now deceased. Defendant has remained in close contact with her mother, who has returned to the Dominican Republic.

Defendant completed high school and two years of university studies in the Dominican Republic while residing with her grandparents. In 1983, she married her first husband, a professional baseball player employed by the Pittsburgh Pirates. He brought her to the United States for the baseball season in 1983, they returned to the Dominican Republic, and then the two came to New York to settle in 1984. In late 1984, defendant and her husband were divorced, apparently because of separations due to his baseball career. The husband maintains sporadic contact, but provides no financial support. Defendant has an eight-year-old daughter by this marriage.

After the divorce, defendant lived with her uncle. She was remarried to a member of the United States Air Force in 1985. They had no children and were divorced in 1988. The second husband is out of contact and provides no support. In 1988, defendant and her daughter moved into their own apartment in the Bronx. Without support from either husband, defendant soon encountered financial difficulties and chose to pursue welfare fraud.

Since June 1991, defendant and her daughter have been living with defendant's

boyfriend, who is a United States citizen and a fire safety director, in a brownstone he owns in Brooklyn. Her daughter attends public school. Defendant is in good health. She is studying English and has been working since 1987 for a cleaning contractor. She cleans an office building in Manhattan at nights, earning $409 per week. She sends $135 to $200 per month to her mother in the Dominican Republic.

Defendant acknowledges her guilt. She says she refused to participate in the fraud the first two times she was approached with the scheme, but then succumbed in 1988. She discontinued her involvement when she became aware that others had been arrested. She says she spent the proceeds of her crime on living expenses for herself and her child and for support of her mother. Imprisonment far from New York would be unnecessary and harmful to this defendant and her child. She should remain a productive member of the workforce who supports and educates her child.

Defendant is sentenced to five years probation with the first six months to be served in home confinement with provision to leave for work, medical care, religious worship and as allowed by Probation. Defendant is ordered to pay restitution of $39,053.15 and a $50 assessment. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is within the Guidelines range.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the child. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### K. Elena Garcia Ramos, CR 92–263

 Ms. Ramos was born in the Dominican Republic. She is 48 years old and is a resident alien in this country. She used three aliases to steal $218,078.45 in benefits payments between 1988 and 1992. In addition, she sold fraudulent documents to other participants in the scheme who netted an additional $238,223.80 in criminal proceeds.

The Guidelines call for a sentence of 18 to 24 months in prison followed by two to three years of supervised release. The government moves for a downward departure on condition that defendant testifies and provides information upon the request of the government.

Defendant is the third-oldest of ten children. She suffered an impoverished childhood as the daughter of farm workers in the Dominican Republic. Both parents are dead. Six of defendant's siblings live in Manhattan, two in the Bronx and one in New Jersey. Eight of the nine have children of their own. Defendant entered the United States with false documents in 1972 and came to Brooklyn. She was married in 1970 and divorced in 1979, having had no children. She remarried in 1979 to a man who proved to be physically abusive and adulterous. This marriage produced two boys, now aged nine and twelve. After five years, the husband returned to the Dominican Republic to live with another woman. He has provided no support for his children.

The children now live with their mother and attend public school. The family lives in a three-bedroom apartment in the Wakefield section of the Bronx for which defendant pays $335 per month. Between 1987 and 1991, defendant maintained a relationship with a man in the Dominican Republic and flew there frequently, leaving her children with one of her sisters.

Upon entering the United States, defendant began working as a vegetable packer. This job ended in 1991 when the company closed. Defendant now collects public assistance. She is illiterate.

Defendant has AIDS. She needed a walker and manual assistance to come to the court for sentencing. She is in, or approaching, the terminal stage of her illness. She requires constant intravenous infusions which a private duty nurse supplies seven days a week. She also has a home health aide who comes four days per week and a homemaker who comes to care for the children every day. She has lost sight in her left eye and her condition continues to deteriorate.

Defendant's fraud was among the most extensive in all these cases. In addition, by vending the false documents that lay at the heart of this scheme, she greatly facilitated the expansion of these crimes. Defendant is sentenced to 18 months imprisonment, three years of supervised release and ordered to pay restitution of $218,078.45 and a $50 assessment. The execution of the sentence is suspended so that defendant may maintain her current course of medical treatment. In view of her medical condition, imprisoning her would only accelerate her death and compound the pain of her further decline. Adequate care is not available in prison or the Dominican Republic. The cheapest and most humane way of maintaining her for the short remaining period of her life is by treating her at home.

Because of the term of incarceration no community service is required. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is at the low end of the Guidelines range. Probation shall attempt to obtain support from the children's father. It shall ensure that adequate homemaking service for the children is afforded.

L. Eleuteria Fernandez, CR 92–372

▮ Ms. Fernandez was born in the Dominican Republic. She is 45 years old and a resident alien in the United States. Between 1987 and 1992 she stole $34,957 from the AFDC and Food Stamp programs.

The Guidelines call for a sentence of imprisonment of six to twelve months followed by two to three years of supervised release. As an alternative, the court may impose a term of imprisonment of three months followed by a term of supervised release with a special condition requiring three months of community confinement or home detention. Defendant is also eligible for probation of one to five years, provided that the court imposes a condition requiring intermittent or community confinement or home detention for six months.

Defendant, the fifth of six children, was raised in poverty in the Dominican Republic. She remained close to her parents. Her mother died of cancer 16 years ago. Her father is in poor health and lives with defendant's sister on Long Island. Defendant came to the United States when she was 16. In 1965, she returned to the Dominican Republic to be wed. Defendant and her husband were divorced in 1972 and he has provided no financial support. Their two children are now aged 25 and 21. Both work and the younger one lives with defendant.

For the past eleven years, defendant has lived with a man whom she calls her husband, though they are not legally married. He has been disabled since 1981 as a result of a work-related back injury and collects $300 per month from his former company. He often cannot get out of bed. They have a son, aged eleven, and a daughter, aged eight. The family lives in a small, three-bedroom apartment in Cypress Hills.

Since the death of her mother, defendant has suffered from depression. On occasion, she has been hospitalized. Her doctor, who recently died, prescribed valium for her condition for many years and she continues to take it on a daily basis. Defendant's physical health is good. She has a sixth-grade education and has been unemployed and collecting public assistance for 20 years.

Defendant regrets her actions. She stole to provide for her family and now fears for

them because of her troubles. She is needed at home to care for her children and her disabled companion. Imprisonment far from New York would cause needless harm. Defendant is sentenced to five years probation, the first six months to be served in home detention with provision to leave for work, medical treatment, religious worship and as provided by Probation. Defendant also is ordered to pay restitution of $34,957 and a $50 assessment. Probation shall arrange for psychiatric care as required. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is consistent with the Guidelines.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the children. During the period of probation, to the extent that family requirements permit, defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### M. Onfalia Ramos, CR 92–377

 Ms. Ramos was born in the Dominican Republic. She is 39 years old and a United States citizen. Between 1989 and 1991, she stole $43,042.25 from the AFDC and Food Stamp programs by opening four false welfare cases.

The Guidelines call for a sentence of eight to fourteen months imprisonment followed by supervised release of two to three years. As an alternative, the court may impose a term of imprisonment of four months followed by a term of supervised release with a special condition requiring five months of community confinement or home detention. Defendant gave substantial cooperation to the government; it moves for a downward departure.

Defendant was raised in poverty in the Dominican Republic, one of nine children of small parcel farmers. Defendant's parents and siblings continue to live there and defendant sends financial assistance when possible. In 1979, defendant was married in the Dominican Republic. In 1980, she came to the United States to join her husband who had arrived several months earlier. Their three children initially remained in the Dominican Republic under the care of their aunt. In 1985, the children permanently joined their parents in New York.

Despite his efforts, defendant's husband has been unable to maintain employment beyond sporadic work repairing automobiles and tires. A son, aged 17, is in the eleventh grade at a high school in the Bronx. A daughter, aged 16, is also in the eleventh grade at this school and is now pregnant with her first child. She hopes to continue school, and she and the child will remain at home. The youngest child, a daughter, is 14 and is in the ninth grade at the same school; she is being treated for a tumor in her leg.

The family now lives in a four-room basement apartment for which they pay $550 per month. Defendant has a grade-school education in the Dominican Republic. Her English is poor. She has been employed since 1987 as a factory worker with a shoulder-pad manufacturer in Brooklyn. She earns $6.73 per hour and is in good health.

Defendant regrets her participation in welfare fraud. She terminated her participation before she was apprehended. She says she became involved because of the financial needs of her family and that she eventually ceased the activity because she had qualms about it. She used the proceeds to pay basic living expenses. Defendant should be encouraged to remain a

productive member of the workforce, with the family remaining intact. Deterrence requires some period of confinement, however.

Defendant is sentenced to five years probation, the first six months to be served in home confinement with provision to leave for work, medical treatment, religious services and as allowed by Probation. She is ordered to pay restitution of $43,042.25 and a $50 assessment. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure is required for the welfare of defendant's family and for other reasons set forth in this memorandum.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the children. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### N. Lucia Trinidad, CR 92–384

■ Ms. Trinidad was born in the Dominican Republic. She is 35 years old and a resident alien in the United States. She used aliases to open two fraudulent cases, collecting a total of $22,179.50 under one of them. Defendant has not cooperated with the government. While there is no evidence that she conspired with others in her fraud, her mother is known as "the matriarch of the document selling ring" and is wanted by the government. In addition, defendant's two sisters and brother, who have not been apprehended, are known to have defrauded the government of over $167,000.

The Guidelines call for a sentence of six to twelve months in prison followed by two to three years of supervised release. As an alternative, defendant may be sentenced to three months in prison followed by a term of supervised release with a special condition requiring three months of community confinement or home detention. Defendant is also eligible for probation of one to five years upon condition of intermittent or community confinement or home detention for six months.

Defendant had a difficult childhood in the Dominican Republic. Her parents were not married. The father, who died in 1987, was an alcoholic and left the family when defendant was seven. The mother beat defendant. Defendant and her children came to New York in 1981 to join her husband in Manhattan, whom she had married in 1980. She maintains intermittent contact with her mother. Defendant has numerous siblings and half-siblings, most of whom remain in the Dominican Republic.

Defendant and her husband had three sons in the Dominican Republic before being married. The husband suffers from mental illness and has frequent periods of depression; he has no medical insurance and is obtaining no medical treatment. He is now unemployed and resides with his brother. The couple has a fourth child, born in the United States. The oldest son is 19 and is unemployed and attempting to graduate from high school. The next son is 17, works at the First Boston Corporation in New York, and also is hoping to graduate from high school. Another son, 12 years old, is entering the eighth grade. The youngest child is seven and attends Catholic grade school; the child's uncle pays the tuition of $70 per month. All the children live with defendant.

Defendant supports her children with public assistance payments. They live in a three-bedroom apartment in Manhattan that rents for $440.93 per month. Defendant has a sixth-grade education and is

taking English classes. She also is being trained at City College to work in hospitals. Except for a few months when she first arrived here, defendant has been unemployed and on public assistance. She suffers from chronic pain and has been running fevers recently. She has been treated for depression and anxiety.

Defendant accepts responsibility for and regrets her crimes. Imprisonment far from New York at this time would unnecessarily jeopardize the children. Neither the father nor any other relative appears capable of caring for the children.

Defendant is sentenced to five years probation, the first six months to be served in home confinement with provision to leave for work, school, medical treatment, religious worship and as provided by Probation. Defendant also is ordered to pay restitution of $22,179.50 and a $50 assessment. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is consistent with the Guidelines.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the children. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week or attending school for ten hours per week, such employment or school shall count as the requisite community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution and for every credit earned at school $100 towards restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid, or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### O. Cruz Pena, CR 92–385

 Ms. Pena was born in the Dominican Republic. She is 39 years old and a resident alien in the United States. She stole a total of $26,730.30 from the AFDC and Food Stamp programs between 1989 and 1991, using two aliases. Defendant has a related state conviction. In June of 1992, she was sentenced to five years of probation by the Bronx Supreme Court for using forged birth certificates between 1986 and 1991 to obtain $35,000 in food stamps and medical benefits. She agreed to pay restitution as a condition of probation.

The Guidelines call for a sentence of four to ten months in prison followed by two to three years of supervised release. As an alternative, defendant may be sentenced to two months in prison followed by a term of supervised release with a special condition requiring two months community confinement or home detention. Defendant is also eligible for probation of one to five years, provided that the court imposes a condition requiring intermittent or community confinement or home detention for six months.

Defendant had a difficult childhood as the third of 18 children. Her father was a farmer in the Dominican Republic and supported the family, though they lived in poverty. Nine of her siblings died during her youth. In 1977, the entire family came to the United States. The father found work as a janitor at Alexander's Department Store, a job he reportedly still holds, although his employer is bankrupt. The parents remain together and defendant is in close contact with them. Most of defendant's surviving siblings reside in Manhattan, the Bronx, and Yonkers and are employed. Two brothers were deported as a result of narcotics charges and now farm in the Dominican Republic.

Defendant married before she left the Dominican Republic. The couple had one child, now 18 years old. They were divorced in 1975. The father has never provided support and his whereabouts are not known.

Defendant then had four children with a man to whom she is not married. The

children are 13, 12, 10 and seven months. They all live with defendant and, except for the infant, attend school. Defendant's relationship with the children's father has ended because of her involvement in these crimes. He still visits the children, and is subject to a court order to provide child support of $74 per week which he pays.

Defendant and her children live in a two-bedroom apartment for which she pays $385 per month. Defendant is in good health. She left school in the Dominican Republic after sixth grade. She is studying English. From 1975 to 1981, defendant earned $80 per week making handbags. Since 1984, she has been on public assistance.

Defendant is sorry for what she has done. She knew her actions were criminal but believed she would not be discovered. Most of the money was used to provide for the family. While the Guidelines count this defendant as having a criminal history, her conduct here does not warrant treatment as a repeat offense because it was contemporaneous with and integrated with the conduct for which she was sentenced in state court. She did not commit the crimes at issue here while on probation.

Defendant's children need her supervision and care. There is no one who could care for her youngest children were she incarcerated.

Defendant is sentenced to five years of probation, with the first six months to be served in home confinement with provision to leave for work, medical treatment, religious worship and as provided by Probation. Defendant also is ordered to pay restitution of $26,730.30 and a $50 assessment. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is consistent with the Guidelines.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the children. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation be-cause it is unduly burdensome or interferes with the welfare of the children in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

## P. Mercedes Diaz, CR 92–553

 Ms. Diaz was born in the Dominican Republic. She is 31 years old and a resident alien in the United States. Between 1988 and 1991, she opened eight fraudulent cases and stole $120,518 from the AFDC and Food Stamp programs.

The Guidelines call for a sentence of 12 to 18 months in prison followed by two to three years of supervised release. The government moves for a downward departure based upon her substantial assistance in the investigation and prosecution of these offenses.

Defendant was raised with two siblings in a poor family in the Dominican Republic. Her parents, who were not married, separated soon after her birth. Her mother worked as a housekeeper. The family came to the United States in 1977 after defendant's brother had arrived and established himself in New York. In 1983, defendant met her husband and they lived together until they were married in 1989. Defendant's father now also lives in New York and works in a factory in New Jersey. He has remarried and has three children, and defendant remains in close contact with him. Defendant and her mother live in the same building. The mother suffers from high blood pressure and a heart condition. Defendant partially supports her fi-

188

nancially and is the only person who can take care of her.

Defendant's husband has worked since 1984 as a tire mechanic in Yonkers, earning $600 per week. Defendant and her husband have been separated periodically since 1985 due to strains over his frequent trips to the Dominican Republic. He claims to visit his mother and she suspects he is visiting another woman. They have two children, a boy aged eight and a three-year-old daughter. Defendant's mother cares for them when defendant is at work. The family lives in a four-room apartment that rents for $579 per month.

Defendant received a high school education in the United States. She started college but did not finish. She also has some training as a travel agent. Her health is good, though she has some history of high blood pressure. Defendant tested positive for cocaine at one of her Probation interviews. She disputes the test and claims not to use drugs. Before 1991, defendant did not work. During 1991 she was a cashier at a supermarket that is now closed. She now earns $594 every two weeks as a laundry clerk at a home for the elderly. Her credit card bills exceed the current balance in her bank account.

Defendant regrets her crimes and has been forthright about them. She decided to participate in welfare fraud after being enticed by a woman she had known in the Dominican Republic. Defendant resisted at first, but then determined that these crimes could be the solution to her family's financial difficulties, including the needs of her ill mother. The proceeds, after those who helped defendant open her cases took their share, never amounted to more than $200 per month. Defendant used most of the money to buy clothes for her children and a washing machine for her mother, and sent the rest to a relative in Santo Domingo.

Aside from the fact that defendant stole a relatively large amount of money by opening many false cases, the facts of her crimes and her family and employment situations match those of the majority of defendants in these cases. If anything, this defendant is more employable than the average. While deterrence requires some confinement given the extent of her fraud, imprisonment far from New York would needlessly damage the family.

Defendant is sentenced to five years of probation, with the first eight months to be served in home confinement with provision to leave for work, medical care, religious worship and as provided by Probation. Defendant also is ordered to pay restitution of $120,518 and a $50 assessment. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure is ordered for the welfare of defendant's family and for other reasons set forth in this memorandum.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the children. During the period of probation defendant shall provide 36 hours per week of community service, up to a maximum of 1,000 hours, unless otherwise directed by Probation because it is unduly burdensome in a particular period. If defendant is gainfully employed earning income for at least 36 hours per week, such employment shall count as community service. In addition, for every hour of such employment defendant is to receive a credit of $10 towards the bill for restitution. These provisions are designed to encourage gainful employment. While the court has no power to order that she not be given welfare, food stamps, Medicaid or other assistance, Probation shall take appropriate steps to ensure that such payments are minimized or eliminated as a result of gainful employment.

### Q. Maria Burdie, CR 92–576

■ Ms. Burdie was born in the Dominican Republic. She is 34 years old and claims legal residency in the United States though the government has no record of her status. Between 1985 and 1992, defendant stole a total of $313,966 from the AFDC and Food Stamp programs using 12 false names.

The Guidelines call for a sentence of 15 to 21 months in prison followed by two to three years of supervised release. The government moves for a downward depar-

ture on condition that defendant testify and supply further information upon the government's request.

Defendant was raised as an only child in a poor family in the Dominican Republic. Her father left her mother when defendant was still an infant. Her mother supported her by working as a housekeeper. In 1979, defendant's mother immigrated to the United States and settled in New Jersey. In 1982, defendant joined her there. Defendant lived with her mother for one year and then moved to New York. Her mother remarried and then separated from her second husband, and now has two other children. Defendant remains in contact with her mother.

Defendant was married in 1984 in Santo Domingo. She and her husband had no children. He remained in the Dominican Republic and they were divorced in 1987. Before her divorce, she began a relationship with another man. They had three children who all reside with defendant: four-year-old twin girls and a boy aged six years. The father ended the relationship because of defendant's criminal conduct. He cannot support the children at present.

Defendant and her three children live in a four-room apartment for which she pays $686 per month. Defendant is in good health. She has a fifth-grade education and speaks no English. She has been unemployed since 1985 and was collecting welfare between 1989 and 1992. Before 1985, she worked only sporadically.

Defendant knew her actions were criminal, but thought she would not be caught. She now regrets her crimes. This defendant initiated an unusually large number of fraudulent cases and stole a great deal. In view of the number of false cases she opened, the government fairly characterized her conduct as brazen. Deterrence requires that she be confined for some time. Her young children must also be considered. They need her care, and the father's ability to support them financially cannot be counted upon.

Defendant is sentenced to 12 months incarceration followed by three years of supervised release. Probation shall arrange for temporary care of the children. Defendant also is ordered to pay restitution of $313,966 and a $50 assessment. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, a downward departure is ordered for the welfare of defendant's family and for other reasons set forth in this memorandum.

Probation shall arrange for the restitution payments so as to permit sufficient income to care for the children. In view of the incarceration community service is not appropriate. The sentence is stayed to permit prompt voluntary departure from the United States and while defendant remains outside the United States.

### R. Dinorah Dominguez, CR 92–696

■ Ms. Dominguez was born in the Dominican Republic and is a resident alien in the United States. She is 38 years old. Defendant stole $39,897.20 from the AFDC and Food Stamp programs using three false names. Defendant opened four additional cases, but no benefits were received from them. She also paid $900 in bribes.

The Guidelines call for a sentence of six to twelve months in prison followed by two to three years of supervised release. As an alternative, the court may impose a sentence of three months in prison followed by a term of supervised release with a special condition requiring three months of community confinement or home detention. Defendant is also eligible for probation of one to five years subject to a condition requiring intermittent or community confinement or home detention for six months. The government moves for a downward departure for substantial assistance on condition that defendant testifies and provides information upon the government's request.

Defendant was the only child of an unwed couple. Her early years lacked stability. Her parents separated when she was still an infant and she remained with her mother. When defendant was seven years old, her mother left for the United States, consigning defendant to the care of

her father's girlfriend. The girlfriend's income from a job as a laundry worker supported defendant. In 1987, defendant moved to the United States to join her paternal half-sister in Queens. Defendant's father has died and defendant's mother, with whom she does not maintain contact, has returned to the Dominican Republic. The woman who raised defendant is now 70 years old and remains in the Dominican Republic.

Defendant now lives with her paternal half-sister and the sister's husband; they have four children. Defendant's other paternal half-sister, Dinorah Caba, also lives in New York and is a related defendant in these cases. Defendant has never been married, but has two children, ages ten and seven. Both children were born in the Dominican Republic and live there with defendant's half-sister. Defendant sends them $200 every two weeks. She says she was planning to bring the children to the United States before she was arrested. The father is now out of contact with the family.

Defendant pays $200 per month in rent to her half-sister. She is in good physical health, but says she suffers from depression. She continues to take medication prescribed by a doctor she saw in the Dominican Republic. Defendant left school after the eighth grade. She has been working since May 1992 for a necktie manufacturer, earning $180 per week. Before 1992, she earned $100 per week as a babysitter.

Defendant says she stole out of financial need and that she used the proceeds to support herself and her children in the Dominican Republic. Defendant has not cared for her children for the past five years. Imprisonment of this defendant will not significantly harm the children. Ultimately, her return to the Dominican Republic might be best for the family.

Defendant is sentenced to nine months in prison followed by three years of supervised release. Restitution of $39,897.20 and a $50 assessment are ordered. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is in the middle of the Guidelines range. Probation shall arrange for the restitution payments so as to permit sufficient income for the family.

In view of the prison sentence, no provision for community service is needed. The sentence is stayed for ten days to permit defendant to leave the country. If she departs promptly and voluntarily, the prison sentence, supervised release term and order of restitution will be stayed while she remains outside the United States. If she returns, she will go to prison. There is good reason not to require taxpayers to pay the cost of $1,492 per month for imprisonment and $115 per month for supervised release. Having left the country, she shall not return illegally.

## S. Gloria Martinez Delgado, CR 92–698

■ Ms. Delgado was born in the Dominican Republic and is a resident alien in the United States. She is 47 years old. Defendant stole $70,780.95 from the AFDC and Food Stamp programs, using four aliases. She also accepted mail, for a $50 per month fee, for three others who opened 12 fraudulent cases.

The Guidelines calls for a sentence of 10 to 16 months in prison followed by two to three years of supervised release. A five-month sentence with three years of supervised release and five months home or community detention is also permitted. The government moves for a downward departure based upon defendant's substantial assistance in the investigation and prosecution of these offenses.

Defendant grew up in a poor family as the ninth of ten children. Her father's work as a farmer supported the family. Defendant's parents have both died. All of her siblings have remained in the Dominican Republic. Defendant was married in 1964 to a Dutch man. The one child from that marriage is now 26 and lives in the Netherlands. Defendant was divorced in 1969. The child's father died in March of 1992.

Prior to her divorce, defendant was involved in another relationship that produced three children. The children are now

20, 19 and 16 years old, and all live in Santo Domingo with their father's sister. Defendant remains in contact with the father but their relationship ended when defendant came to the United States in 1985.

Defendant remarried in 1986. Her husband earns $300 per week as a security guard. The couple have been sharing a two-room apartment in Brooklyn and have no children. He has asked her to move out although he continues to pay the rent of $475 per month and support her. Defendant has high blood pressure and heart problems and is being treated for insomnia and depression. She takes seven different medications. Her husband's union benefits pay for part of her medical care.

Defendant has an eighth-grade education and speaks no English. She worked for a babysitting service from 1985 until 1989 but has not worked since.

Defendant sent most of the proceeds of her crimes to her children in the Dominican Republic. She says she sought to provide for her family and regrets what she has done. Defendant is seriously ill. She cannot work. She is being treated for these problems in New York. Her doctor indicates in a written report that it would be deleterious to her health were her present treatment terminated by her leaving New York.

Defendant is sentenced to five months in prison followed by three years of supervised release with a special condition of five months home detention, with provision to leave for work, medical treatment, religious worship and as provided by Probation. Restitution of $70,780.95 and a $50 assessment are ordered. The sentence imposed is required by statute in the court's informed discretion. If the Guidelines are held to be controlling, the sentence is consistent with the Guidelines. Probation shall arrange for the restitution payments so as to permit sufficient income for the family.

In view of the prison sentence, no provision for community service is needed. The sentence is stayed to permit medical treatment to continue.

## III. SUMMARY OF SENTENCES

| Name | Imprisonment | Probation | Community or Home Detention | Superv. Release | Fine and/or Restitution |
|------|--------------|-----------|-----------------------------|-----------------|-------------------------|
| Figueroa | | 5 years | 8 months | | $ 83,912 |
| Roman | | 5 years | 6 months | | $ 22,398.65 |
| Vargas, D. | | 5 years | 12 months | | $148,607.15 |
| Escobar | 10 months | | | 3 years | $ 49,070.25 |
| Polanco | | 5 years | 6 months | | $ 30,855.05 |
| Vargas, M. | 8 months | | | 3 years | $107,977 |
| Real | | 5 years | 6 months | | $ 25,105.05 |
| Heredia | | 5 years | 6 months | | $ 13,985.65 |
| Perez | | 5 years | 6 months | | $ 50,552 |
| Sosa | | 5 years | 6 months | | $ 39,053.15 |
| Ramos, E. | 18 months | | | 3 years | $218,078.45 |
| Fernandez | | 5 years | 6 months | | $ 34,957 |
| Ramos, O. | | 5 years | 6 months | | $ 43,042.25 |
| Trinidad | | 5 years | 6 months | | $ 22,179.50 |
| Pena | | 5 years | 6 months | | $ 26,730.30 |
| Diaz | | 5 years | 8 months | | $120,518 |
| Burdie | 12 months | | | 3 years | $313,966 |
| Dominguez | 9 months | | | 3 years | $ 39,897.20 |
| Delgado | 5 months | | | 3 years | $ 70,780.95 |

## IV. RULE 35 MOTIONS

In the cases of some defendants, the government did not recommend downward departures based upon their assistance in the investigation and prosecution of these offenses. Should these defendants provide substantial cooperation to the govern-

ment's ongoing investigation of these matters, the court will entertain any motions the government wishes to make pursuant to Federal Rule of Criminal Procedure 35(b) for reduction of those defendants' sentences.

## V. CONCLUSION

For the reasons stated in this memorandum and orally on the record during allocutions and upon sentencing, and based upon the court's observations of defendants and upon all the files in these cases, the above sentences are imposed. The sentences are stayed pending appeals. Those defendants sentenced to prison shall be taken before a magistrate judge to reconsider bail pending appeal.

SO ORDERED.