UNITED STATES of America

v.

Martha CONCEPCION, a/k/a Martha Martinez, a/k/a Martha Morales, a/k/a Julianna Sanchez, a/k/a Sonia Serrano, a/k/a Gladys Torres, Defendant.

UNITED STATES of America

v.

Ana MORILLO, a/k/a Rossi Colon, a/k/a Marta Fernandez, a/k/a Luz Lopez, a/k/a Gloria Velez, a/k/a Jeanette Ruiz, Defendant.

UNITED STATES of America

v.

Jane ARENDELL, a/k/a Maria Gonzalez, a/k/a Annette Rivera, Defendant.

UNITED STATES of America

v.

Dinorah CABA, a/k/a Digna Rios, a/k/a Dinorah Santana, a/k/a Maria Santana, a/k/a Maritza Santana, Defendant.

UNITED STATES of America

v.

Anna VEGA, a/k/a Ana Vega, a/k/a Ana Hernandez, Defendant.

UNITED STATES of America

v.

Lourdes ARIAS, a/k/a Hilda Lopez, a/k/a Judy Ojeda, a/k/a Yvette Rivera, Francisca Vargas, Defendant.

UNITED STATES of America

v.

Esperanza LARA, a/k/a Maria Candeleria, a/k/a Anny Centreras, a/k/a Pura Concepcion, a/k/a Ivette Matos, a/k/a Janet Rivera, a/k/a Janet Rodriguez, a/k/a Milagros Soto, Defendant.

UNITED STATES of America

v.

Mayra COLLADO, a/k/a Veronica Ayala, a/k/a Cristina Mejias, a/k/a Josephine Minaya, Defendant.

UNITED STATES of America

v.

Maria RAMIREZ, a/k/a Ana Moldonado, a/k/a Marina Ramirez, Defendant.

UNITED STATES of America

v.

Patria Mabel MERCEDES, a/k/a Carmen Marrero, a/k/a Marcy Pelier, Defendant.

UNITED STATES of America

v.

Georgina CEPIN, a/k/a Maria Gonzalez, Margarita Rodriguez, a/k/a Evelyn Rosario, a/k/a Antonia Sanchez, Defendant.

UNITED STATES of America

v.

Maria BAEZ, a/k/a Iris Cruz, a/k/a Maria Gonzalez, a/k/a Sara Gonzalez, a/k/a Yaraina Graciano, a/k/a Rosaura Lopez, a/k/a Elsa Rias, a/k/a Miriam Santana, a/k/a Sabrina Soto, a/k/a Maritza Torres, Defendant.

UNITED STATES of America

v.

Griselina OGIRRI, a/k/a Griselina Altagracia Rodriquez de Then, a/k/a Griselina Then–Amparo, Defendant.

UNITED STATES of America

v.

Sonia JIMINEZ, a/k/a Maritza Cruz, a/k/a Patria Germosen, a/k/a Salina Salas, a/k/a Noemi Santiago, a/k/a Maribel Vega, Defendant.

UNITED STATES of America

v.

Calidad Reynoso Peralta MACK, a/k/a Marina Garcia, a/k/a Caridad Mack, a/k/a Maria Perez, a/k/a Diana Pons, a/k/a Sandra Torres, Defendant.

UNITED STATES of America

v.

Flavia POLANCO, a/k/a Carmen Garcia, a/k/a Zurma Gonzalez, a/k/a Guillermina Rivera, a/k/a Xiomara Soto, a/k/a Xiomara Vargas, Defendant.

UNITED STATES of America

v.

Marilyn PEREZ, a/k/a Maria Rivera, a/k/a Sonya Rivera, Defendant.

UNITED STATES of America

v.

Elvira GARCIA, a/k/a Sonia Hernandez, Altagracia Pena, a/k/a Cesaria Rivera, a/k/a Flora Rivera, Defendant.

UNITED STATES of America

v.

Rosario LOPEZ, a/k/a Sara Calderon, a/k/a Maria Medina, Defendant.

UNITED STATES of America

v.

Mercedes PERALTA, a/k/a Sandra Colon, a/k/a Melagros Rivera, Defendant.

UNITED STATES of America

v.

Virginia FIGUEROA, a/k/a Patris Gordon, a/k/a Lillian Navarro, a/k/a Juana Martinez, a/k/a Rita Pagan, a/k/a Mary Puig, a/k/a Rosa Rivera, Defendant.

UNITED STATES of America

v.

Theresa Amelia ROMAN, a/k/a Gladys Arias, a/k/a Pamela Gonzales, a/k/a Sandra Ortega, a/k/a Mirna Perez, Defendant.

UNITED STATES of America

v.

Delores VARGAS, a/k/a Olga Almondovar, a/k/a Nelly Garcia, a/k/a Rosario Lopez, a/k/a Gladys Taveras, Defendant.

UNITED STATES of America

v.

Bertha ESCOBAR, a/k/a Marina Marrero, Defendant.

UNITED STATES of America

v.

Alison POLANCO, a/k/a Andrea Garcia, Defendant.

UNITED STATES of America

v.

Maria VARGAS, a/k/a Betty Hernandez, a/k/a Caridad Nunez, a/k/a Delia Valentin, a/k/a Esther Vargas, Defendant.

UNITED STATES of America

v.

Romula REAL, a/k/a Nancy Cepero, a/k/a Brenda Diaz, a/k/a Marina Diaz, a/k/a Alexandra Gomez, Defendant.

UNITED STATES of America

v.

Victor HEREDIA, a/k/a Juan Colon, a/k/a Victor Delgado, Defendant.

UNITED STATES of America

v.

Jacqueline PEREZ, a/k/a Miguelina Cordero, a/k/a Yaquelin Perez, Defendant.

UNITED STATES of America

v.

Miriam SOSA, a/k/a Ivette Clemente, a/k/a Maria Mojica, Defendant.

UNITED STATES of America

v.

Elena Garcia RAMOS, a/k/a Elena Gonzales, a/k/a Ligia Ramos, a/k/a Ana Serano, Defendant.

UNITED STATES of America

v.

Eleuteria FERNANDEZ, a/k/a Mitilde Figueroa, a/k/a Carmen Pagan, a/k/a Myrna Santiago, Defendant.

UNITED STATES of America

v.

Onfalia RAMOS, a/k/a Lisette Carrillo, a/k/a Ruth Gonzales, Defendant.

UNITED STATES of America

v.

Lucia TRINIDAD, a/k/a Azecuna Echevarria, a/k/a Caridad Soto, Defendant.

UNITED STATES of America

v.

Cruz PENA, a/k/a Antonia Pacheco, a/k/a Elena Velez, Defendant.

UNITED STATES OF AMERICA

v.

Mercedes DIAZ, a/k/a Sandra Acosta, a/k/a Lisette Carillo, a/k/a Ziamara Colon, a/k/a Eva Diaz, a/k/a Idalia Escobar, a/k/a Josephine Ojeda, a/k/a Bernice Ortiz, a/k/a Ladisloa Sanchez, Defendant.

UNITED STATES of America

v.

Maria BURDIE, a/k/a Antonia Gonzales, a/k/a Cecilia Lopez, a/k/a Francia Martinez, a/k/a Zaida Mendez, a/k/a Maria Ovalle, a/k/a Milagros Rivera, Amarilis Rodriguez, a/k/a Evarista Santana, a/k/a Maria Santana, a/k/a Lola Santos, a/k/a Lucia Tejeda, a/k/a Victoria Valdes, Defendant.

UNITED STATES of America

v.

Dinorah DOMINGUEZ, a/k/a Vanessa Arango, a/k/a Raisa Meja, a/k/a Minerva Perez, a/k/a Altagracia Ramos, a/k/a Juana Reyes, a/k/a Ada Rodriguez, a/k/a Karen Torres, Defendant.

UNITED STATES of America

v.

Gloria Martinez DELGADO, a/k/a Catalina Arroyo, a/k/a Aura Garia, a/k/a Victoria Irizarry, a/k/a Mercedes Mendez, Defendant.

UNITED STATES of America

v.

Milagros PICHARDO, Defendant.

UNITED STATES of America

v.

Marisol ARIAS, Defendant.

UNITED STATES of America

v.

Carlista FIGUEROA, Defendant.

UNITED STATES of America

v.

Sofia Yolando HEREDIA, Defendant.

UNITED STATES of America

v.

Maria LAZALLA, Defendant.

UNITED STATES of America

v.

Altagracia GRAVELY, a/k/a Miriam Cruz, a/k/a Sara Garcia, a/k/a Carmen Medina, Defendant.

UNITED STATES of America

v.

Yoselis OROSCO, Defendant.

UNITED STATES of America

v.

Angelita MORILLO, a/k/a Mayra Baez, Rafael Baez, a/k/a Rausa Baez, Rosa Ortiz, Defendant.

UNITED STATES of America

v.

Lina PICHARDO, a/k/a Ziomara Burgos, a/k/a Marisela Soto, Defendant.

UNITED STATES of America

v.

Juana DeRAMOS, a/k/a Maria Davila, a/k/a Ingrid Gonzales, a/k/a Monica Mojica, Defendant.

UNITED STATES of America

v.

Leonardo SALAS, a/k/a Rossana Lopez, a/k/a Esther Ortiz, Defendant.

UNITED STATES of America

v.

Hilda ALVAREZ, a/k/a Mayra Morales, a/k/a Grecia Obosio, a/k/a Hilda Ortiz, a/k/a Jacqueline Suarez, Defendant.

UNITED STATES of America

v.

Lora EDITA, a/k/a Josephina Gonzales, a/k/a Minerva Marrero, a/k/a Altagracia Martinez, a/k/a Nurys Rivera, a/k/a Teresa Solis, Defendant.

UNITED STATES of America

v.

Dani MONFORT, a/k/a Nellie Duncan, a/k/a Madelyn Ortiz, a/k/a Danillea Rivera, Defendant.

UNITED STATES of America

v.

Pedro Lopez ACEVEDO, Defendant.

**22**

UNITED STATES of America

v.

Servia ZAITER, Defendant.

UNITED STATES of America

v.

Tomasa Lopez DeVARGAS, Defendant.

UNITED STATES of America

v.

Katherine JACKSON, Defendant.

UNITED STATES of America

v.

Altagracia SALAZAR, a/k/a Loida Cruz, Marceline Cruz, a/k/a Antonia Gonzales, a/k/a Josefina Tavares, Defendant.

UNITED STATES of America

v.

Caridad NUNEZ, Defendant.

UNITED STATES of America

v.

Fernando DIAZ, Defendant.

UNITED STATES of America

v.

Luz PORTUHUNDO, Defendant.

UNITED STATES of America

v.

Luz APONTE, Defendant.

UNITED STATES of America

v.

Nydia MARTINEZ, Defendant.

UNITED STATES of America

v.

Mercedes MASON, Defendant.

UNITED STATES of America

v.

Renaldo TOLENTINO, Defendant.

UNITED STATES of America

v.

Rosa De La CRUZ, Defendant.

UNITED STATES of America

v.

Maria Emilia VARGAS, Defendant.

Nos. CR 91–781, CR 91–821, CR 91–822, CR 91–844 to CR 91–848, CR 91–902, CR 91–936, CR 91–937, CR 91–1100, CR 91–1194, CR 91–1254, CR 91–1265, CR 91–1267, CR 91–1268, CR 91–1282, CR 91–1283, CR 92–264, CR 91–1165, CR 91–1253, CR 91–1266, CR 91–1299, CR 91–1374 to CR 91–1376, CR 92–157, CR 92–261 to CR 92–263, CR 92–372, CR 92–377, CR 92–384, CR 92–385, CR 92–553, CR 92–576, CR 92–696, CR 92–698, CR 92–857, CR 92–371, CR 92–224, CR 92–381, CR 91–1281, CR 93–30, CR 92–695, CR 91–942, CR 93–34, CR 93–33, CR 93–32, CR 93–31, CR 93–29, CR 93–28, CR 93–27, CR 93–26, CR 93–35, CR 93–283, CR 93–394, CR 93–292, CR 93–624, CR 93–396, CR 93–393, CR 93–392, CR 93–395, CR 93–391, CR 93–625 and CR 93–260.

United States District Court,
E.D. New York.

June 23, 1993.

Andrew J. Maloney, U.S. Atty., Brooklyn, NY by Gordon Mehler and Michael Considine, Asst. U.S. Attys., for U.S.

Steven Gold, Gen. Counsel, Dept. of Investigation, New York City, for City of New York.

Edward Kratt, New York City, for Virginia Figueroa.

Jake LaSala, Kew Gardens, NY, for Roman.

Richard Rosenkrantz, Brooklyn, NY, for Delores Vargas.

John Apicella, Brooklyn, NY, for Escobar.

Lawrence Vogelman, New York City, for Polanco.

Joel Cohen, New York City, for Maria Vargas.

James Kousouros, Kew Gardens, NY, for Real and Fernandez.

Lori Levenson, Brooklyn, NY, for Heredia.

Edward Panzer, New York City, for Carlista Figueroa.

Peter Birkett, Brooklyn, NY, for Perez.

Harold Pokol, New York City, for Sosa.

Hal Myerson, New York City, for Elena Garcia Ramos.

Richard Berne, Bronx, NY, for Onfalia Ramos.

Richard Rosenberg, New York City, for Trinidad.

Bruce Smirti, Willington Park, NY, for Pena.

Debra Baker, New York City, for Diaz.

Nicholas DeFeis, New York City, for Burdie.

Lloyd Epstein, New York City, for Dominguez.

James Neville, New York City, for Delgado.

## AMENDED SENTENCING MEMORANDUM

WEINSTEIN, Senior District Judge:

These cases involve poor people, primarily women from the Dominican Republic, who stole from the federal government by using false names to open fraudulent welfare cases. In its investigation the government uncovered some one thousand such false cases.

Warrants have been issued for 115 persons. Seventy-seven of them have been arrested to date. The rest are fugitives. All who have been arrested have pled guilty. Since July of 1992, forty-five of them have been sentenced. Another twelve were sentenced today. Eight more await sentencing. Six others have received deferred prosecution and the cases of another four await disposition.

Individual cases will continue to trickle in, but the involvement of the United States Attorney in this matter largely has concluded since it has declined prosecution in most cases. Though each case was indicted individually and has its own file number, the matter is properly considered as a single event for purposes of public policy. So viewed, it is the largest criminal case in terms of numbers of defendants ever brought and processed in this district.

The legal considerations applicable to these defendants' sentences and the facts of many of the individual cases are analyzed in detail in two prior memoranda. *See United States v. Concepcion*, 808 F.Supp. 166 (E.D.N.Y.1992) (*Concepcion II*); *United States v. Concepcion*, 795 F.Supp. 1262 (E.D.N.Y.1992) (*Concepcion I*). With this matter now largely concluded, a few words are necessary in summation in this memorandum (*Concepcion III*).

This prosecution illustrates the limitations of the criminal law. The United States Attorney and the federal, state and city investigative agencies involved are to be commended for their efforts to combat the waste and theft of taxpayers' money. The United States Attorney appears to have acted with wise discretion in handling these cases. The government understood from the beginning that unduly harsh sentences for these lowest-level criminals would accomplish little. Downward departures generally were recommended. No hardened or highly organized

criminals were found to be involved within this network of fraud.

The United States Attorney has understood the systemic problems underlying this welfare fraud. He and his staff as well as the City Department of Investigation have done what they could to encourage structural change within the state institutions that administer the stolen funds in order to prevent further abuse.

Nonetheless, there is little indication that this effort has ended the threat of welfare fraud in this city. The selection of roughly one hundred individual wrongdoers for federal prosecution in a city where, according to the 1990 census, over thirteen percent of households receive public assistance from funds administered by the city, state and federal governments is a poor substitute for meaningful reform of the public institutions that permitted this theft.

The strategy of addressing this problem through traditional case-by-case criminal prosecution in the federal courts suffers from two fatal flaws. First, the deterrence value within the communities from which the wrongdoers are selected has been minimal. There has been no indication in the more than a year during which these cases have been before the court that the deterrence message is getting out. Many of the individual defendants, upon being arrested, expressed deep remorse at their involvement with the federal justice system, but the ease with which they committed their crimes and the clear sense of impunity with which they acted suggest that the prospect of penal sanction is remote or nonexistent in the minds of such low-level offenders.

The defendants are almost all young females supporting families by themselves without steady employment. For the most part, they live within an isolated and insular community consisting of fellow immigrants from the Dominican Republic. Most speak English poorly or not at all. Their understanding of our system of government is highly limited. Word travels quickly within this type of closed community. Individual defendants usually were introduced to welfare fraud by peers who had themselves learned from others that it is an easy source of income. Nearly all stole to provide somewhat better lives for their children.

The vast majority of those in the Dominican community in New York City are hardworking persons whose aspirations to make good and productive lives for themselves in the United States must be honored. Such persons historically have formed much of the bedrock of this nation. New groups are to be encouraged in their efforts to continue this tradition.

The court cannot, however, overlook the plain fact that almost every defendant involved in these cases came to the United States from the Dominican Republic. When members of a single community continue over and over again to commit the same crimes, there is a failure of general deterrence. Word of punishment apparently has not passed as quickly as has word of the opportunities for illicit profit.

Should similar cases continue to be brought, the court will be compelled to equally administer more severe sentences of imprisonment than have been pronounced to date to members of all communities. Families, which generally have been kept intact in these cases, will then be broken-up.

The ability of a single court, or even several courts, to affect such large groups is severely limited. The communities themselves, through their leadership and grass-roots political, cultural and religious organizations, must assume responsibility for dealing with unacceptable criminal behavior such as is involved in these cases. Social sanctions administered by peers and those institutions of which members of a community are themselves members and to which they look for guidance will have a far greater cumulative effect than criminal sanctions administered by remote institutions of government. The criminal justice system can police the margins of socially acceptable behavior, but it cannot provide the strong moral leadership necessary to convey and enforce fundamental distinctions between right and wrong. It is not only the Dominican community but practically every community in this city and nation that must cease clinging to the false

notion that the answers to our society's many ills lie in additional law enforcement.

Second, the devotion of law enforcement resources to those who feed parasitically off of laxly administered public funds is misdirected. It can be stated with nearly the certainty of a scientific hypothesis tested over the years in our criminal courts that government benefit programs will be abused if an easy opportunity is provided. This principle will remain in spite of the removal of a handful of abusers, for there will always be countless more to take their places.

While those public officials responsible for the administration of welfare funds in New York City are not criminally liable for the fraud committed here, they do bear much of the onus and culpability. Means have been and are readily available to cut down on the abuses revealed in these prosecutions. Failure of government made it too easy for these defendants to commit their crimes.

The authorities in charge implemented no adequate procedures by which identities could be verified. False identification documents, such as birth certificates, were readily obtainable. The government offices to which these fraudulent papers were submitted did not even ascertain whether a given social security number in fact corresponded to a given name.

Welfare recipients can be readily fingerprinted by automated photographic methods to prevent the use of false identities to open fraudulent cases, as is apparently now done in Los Angeles. *See* Jacques Steinberg, *Fingerprinting Welfare Applicants*, N.Y. Times, Nov. 25, 1992, at B1. The city of Bridgeport, Connecticut has had some success recently through the use of computer systems that provide welfare offices with access to Social Security, Department of Labor and Department of Motor Vehicles records and to photographic images. *See Ferreting Out False Welfare Claims*, N.Y. Times, June 15, 1993, at B7.

Despite the availability of relatively reliable checks on abuse, there appears to have been a reluctance by the state and city to take firm action to prevent further abuses. *See, e.g.,* John Harney, *Welfare Fingerprint-*

*ing,* N.Y. Post, June 9, 1993, at 17 (legislation to provide for fingerprinting and other checks bogs down). The Commissioner of the New York City Department of Investigation, which has conducted the fraud investigation in these cases, has strongly urged the legislature to pass a fingerprinting bill. *See* Attached Memorandum (omitted from printed opinion).

Claims that such a system would be too costly or would demean welfare recipients and interfere with their civil rights are for the legislature, not the courts. *But see* Steinberg, *supra,* at B1 (Los Angeles officials estimated that non-intrusive fingerprinting program saved $5.4 million in first six months). It is not for judges to decide whether our nation's commitment to helping those in need is placed at risk by allowing the fraud and abuse encouraged by negligent supervision to sap public support for government welfare programs. It is appropriate to note that this court's scarce criminal judicial resources can be used more effectively in other cases—particularly if the responsible governmental agencies take effective legislative and executive action to eliminate the kinds of endemic welfare abuses revealed in this case.